**Jolene ZAGARRI, by Vincent Zagarri, Next Friend, Appellant,**

v.

**Charlotte B. NICHOLS, Respondent.**

No. 52533.

Supreme Court of Missouri, Division No. 1.

July 8, 1968.

James W. Jeans, Kansas City, for plaintiff-appellant.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for defendant-respondent.

HOUSER, Commissioner.

This is a suit for $50,000 damages for personal injuries sustained by a 4-year-old child who was struck by an automobile driven by defendant. A trial jury returned a verdict for defendant. Plaintiff appealed.

The collision between automobile and child occurred in an alley in the City of St. Louis on a clear sunny day at about 5 o'clock p. m. The alley was of paved concrete approximately 15 feet wide. Garages and fences bordered the alley on the north side. Defendant, operating a 1957 Ford automobile, the brakes of which were in good working order, was proceeding east, in the middle of the alley, 4 or 5 feet distant from the garages and fences to the left of the driver. The defendant had operated the automobile about 150 feet in the alley at the time of collision. The highest speed attained in the alley was 13 m. p. h. There were no obstructions to the defendant's view, such as other vehicles, telephone poles, etc. Defendant was aware of the fact that this was a residential neighborhood and that normally there were a number of children around there. When defendant's automobile was "a couple" of houses west of the point of impact defendant saw and passed some children (other than plaintiff) walking westwardly on the left side of the alley. When defendant first saw them she slowed down to 6, 8 or 10 m. p. h. but did not alter the course of the automobile. After passing them defendant started to go faster again but did not have "a chance to go very fast because it happened then." Defendant saw plaintiff before the car struck her. Plaintiff was not directly in front of the automobile. Defendant gave the police investigator a statement as follows: "I was driving east in the alley preceding the accident when I saw a group of children, and slowed up. I was going very slow when very suddenly a small child appeared in front of me on my left. I immediately applied my brakes when the child was hit by the left front of the car." Defendant testified at various times that when she first saw her the child was "a couple of feet" to the left side of the car—"two or three feet"—from the path of the automobile, "moving," or "going" east "at a slant to her right," in a southeast direction; that plaintiff was "just a little bit ahead" of the front of the car; a foot or so ahead and a foot or so in front of the front bumper, and once she testified that the child was never ahead of the car. Defendant did not know whether plaintiff's gait was a walk, trot or run and did not know how fast plaintiff was moving. Defendant saw the back of plaintiff's head and 4 or 5 inches below the shoulder level. Plaintiff never did see the automobile. When defendant first saw plaintiff "off to her left" the automobile was traveling at a speed variously estimated by defendant at 6, 8 or 10 m. p. h. Defendant put on the brakes. She did not sound a horn or swerve the car to one side. She did not have time "to do anything but slam on the brakes." The speed of the automobile had been reduced "a little" at the time of contact. The left headlight struck plaintiff in the back of the head and she fell down sideways, "right at the point where she was struck." The automobile did not move "very far" after striking the child. Plaintiff was lying even with the middle of the left door when the car stopped. There was a pool of blood left on the concrete where the child lay, 3 feet south of the rear fence of 6024 Columbia Street and 7 feet west of the east end of the fence which ran along the north side of the alley. There were "overgrown vines" on the fence and bushes around the fences at the point where the accident happened. The bushes and vines were higher than the top of the fence.

Appellant's first point is that the court erred in not granting plaintiff's motion for a directed verdict on the issue of liability, at the close of all the evidence. Appellant

argues that defendant's own testimony established that while traveling east at 6 to 8 m. p. h. in the middle of a 15-foot alley on a clear day with an unobstructed view she overtook and struck from the rear a 4-year-old child who was moving eastwardly in the alley at a slight angle from north to south; that defendant acknowledged (1) the presence of other children in the alley, and that she saw them; (2) her failure to see plaintiff until the left corner of the automobile was within a foot or two from her; (3) the striking of the child; (4) the capacity of the automobile to have stopped in half a car length, and (5) injury to plaintiff, and thus, defendant having admitted the basic facts of plaintiff's case (failure to see plaintiff, capacity for evasive action, striking and injuring plaintiff), a finding of negligence as a matter of law is compelled.

■ Rarely does a negligence case depending upon oral testimony present itself wherein the court is justified in directing a verdict in favor of the party having the burden of proof. Manley v. Horton, Mo. Sup., 414 S.W.2d 254, 258 [4]; Rutledge v. Baldi, Mo.Sup., 392 S.W.2d 244, 246 [1]; Nichols v. Blake, Mo.Sup., 418 S.W.2d 188, 189, 190 [1]; Beezley v. Spiva, Mo.Sup., 313 S.W.2d 691, 695 [7]; Richardson v. Wendel, Mo.Sup., 401 S.W.2d 455, 459 [6]; Emert v. St. Louis Public Service Co., Mo.Sup., 370 S.W.2d 366, 368; Schaefer v. Accardi, Mo.Sup., 315 S.W.2d 230, 233; Daly v. Schaefer, Mo.App., 331 S.W.2d 150, 154. Only in exceptional circumstances, as in the case where the defendant in his pleadings or by his counsel in open court admits or by his own evidence establishes plaintiff's claim, or "where there is no real dispute of the basic facts supported by uncontradicted testimony essential to a claim * * *,"[1] have the courts indicated that there may be an exception to this general rule. This defendant made no such admission either by way of her pleadings (her answer denied the allegations of negligence) or through her counsel. Defendant's testimony does not clearly and unequivocally constitute a concession of the ultimate fact of negligent failure to keep a careful lookout (which was the only negligence submitted). It is true, as appellant suggests, that defendant was obliged to exercise the highest degree of care to keep a lookout laterally and ahead and to discover conditions which a person exercising that degree of care would be expected to see. It is likewise true that the failure to see a plainly visible person would constitute negligence. The evidence, however does not clearly, definitely and unequivocally demonstrate that defendant failed to maintain a lookout measuring up to the requirements of the situation, or that the child was ever in a position where her body and her approaching movements could have been seen by defendant in time to take effective preventive measures. There is no direct evidence as to the position of plaintiff immediately before defendant saw her. Whether she was then on the other side of the fence and came running through an opening in the fence; whether the bushes and vines concealed her from defendant's view; whether she was walking unobtrusively in the alley close to and parallel to the fence, or in plain view was walking or running in a direction that would inevitably bring her into contact with the automobile, are all questions that remain unanswered in this record. That defendant was keeping a lookout is evidenced by her testimony that she saw the other children who were walking in the alley; that she reacted to their presence by decreasing the speed of the automobile, and that she saw plaintiff before the impact. Her statement, however, was that the child appeared in front of her "very suddenly." This is not a situation where a child is shown to be out in an open space where she could be plainly seen for a sufficient time and at a sufficient distance away for an approaching motorist to take effective action in avoid-

1. Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282, 287.

ance of a collision. The situation before us is one in which a child suddenly appears, moving into the path of an automobile in a narrow, confined area bordered by a fence and structures located only 4 or 5 feet from the side of the automobile. While there is no direct evidence that the child suddenly *ran* or *darted* out from behind the fence into the position she occupied when defendant first saw her, that possibility is not negatived or excluded by defendant's testimony, or by any other evidence in the case, and under all of the circumstances this is a legitimate inference. While the evidence made a case for the jury and authorized a finding of negligence by the jury, depending upon the facts it found concerning the surrounding circumstances, it did not establish negligence on the part of defendant as a matter of law. Whether negligence should or should not have been found from the evidence in this case was a matter within the province of the jury and not of the court. The court did not err in refusing to direct a verdict for plaintiff on the liability issue.

Appellant's last point is that the court erred in refusing to send a plat to the jury room. After retiring to deliberate the jury sent for the photographs and the plat. The court sent the photographs but on objection refused to send the plat. Appellant claims that the plat would have made it clear to the jury that the child could not have "popped out from behind an obstruction" because it showed that the north side of the alley was bordered by a fence. Appellant further points out that counsel for respondent in closing argument invited the jury to look at the photographs and suggested that the jury could request to see the photographs (and we assume thereby inferentially suggested to the jury that they could call for the plat); that the jury requested both photographs and plat, and that the court picked and chose, i. e., selected and approved the photographs for their inspection but disapproved their use of the plat. Appellant contends that these factors distinguish this case from other cases in which refusal of a court to permit jurors to examine exhibits has been upheld as a reasonable exercise of judicial discretion. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, 313 [4, 5]; Randall v. Steelman, Mo.App., 294 S.W.2d 588, 594 [15]; Dougherty Real Estate Co. v. Gast, Mo.App., 95 S.W.2d 877, 880 [4, 5]; R. C. Stone Milling Co. v. McWilliams, 121 Mo.App. 319, 98 S.W. 828, 829 [4, 5].

■ The court did not err in its ruling. While generally a jury may be permitted to take to the jury room or send for articles used during the trial to illustrate or explain the testimony of witnesses, 89 C.J.S. Trial § 465 d., p. 103, the allowance or nonallowance of a request for such articles is a matter resting within the sound judicial discretion of the trial judge, and it is improper and erroneous to allow the jury to have articles not properly in evidence which would tend to influence the verdict. The plat was never offered or introduced in evidence. "It is not error for the court to refuse to allow the jury to take a paper, document, or article which has not been admitted in evidence." 89 C.J.S. Trial § 467, pp. 106, 107. In this connection see Buster Brown Co. v. North-Mehornay Furniture Co., 140 Mo. App. 707, 126 S.W. 988 [4]. Even more significant is the fact that there was a notation or writing at one spot on the plat which said "No gate." There was no evidence at the trial to sustain this notation. The notation was ambiguous and potentially misleading. It might have led the jury to believe that there was no opening in the fence through which plaintiff could have run into the alley. On the other hand, the notation might reasonably have been construed to mean that there was an opening in the fence but that there was no gate hanging in the opening. As indicated, neither fact was proved at the trial. This unproved notation was the basis for the court's refusal to send the plat to the jury room. In ruling objection the trial court said: "I think there were some things

on the plat that are not proved—that are not in evidence, such as the gate, that is one." We cannot convict the trial court of an abuse of discretion in refusing to send to the jury room a plat which was not received in evidence and which bore an unproved and potentially misleading notation.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.