**Elaine HICKS, Appellant,**

v.

**George S. MICKELSON, Appellee.**

**Nos. 86–5375, 86–5376.**

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1987.

Decided Dec. 23, 1987.

Owen L. Sorenson, St. Paul, Minn., for appellant.

Harvey C. Jewett, Aberdeen, S.D., for appellee.

Before ARNOLD, Circuit Judge, WRIGHT,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Elaine Hicks, disappointed with the result in her divorce action, brought a legal malpractice case against her lawyer, George S. Mickelson, and now appeals from the adverse verdict. She argues that the district court[1] abused its discretion by allowing the attorneys only fifteen minutes for voir dire examination of the jury panel, that it abused its discretion in excluding evidence of the sale of her ex-husband's business (which occurred some thirteen months after the trial of the divorce case); and she argues the verdict was contrary to the law and the evidence. We affirm the judgment of the district court.

We need not dwell at length on the facts leading up to the Hickses' divorce. Suffice it to say that the Hickses enjoyed an extravagant life-style. They owned three Corvettes and three other vehicles, they traveled and entertained frequently, and they generally enjoyed most of the material advantages of modern life. Doyle Hicks derived substantial income from his amusement and vending machine business. In addition, he allegedly skimmed substantial amounts of profit from the business.

The Hickses were afflicted with another all too common attribute of the modern "good life"—marital discord. Evidently,

Elaine Hicks became romantically involved with one of her husband's business associates. She hired an attorney for the purpose of prosecuting a divorce and, thereafter, they were able to obtain appraisals and agree with Doyle Hicks on the value of most of the marital assets. They were unable, however, to agree on the value of the amusement and vending machine business. Doyle Hicks had it appraised at approximately $200,000 by a businessman knowledgeable in the industry. Mrs. Hicks believed the business to be worth approximately $500,000, and her attorney commenced efforts to obtain an individual to evaluate the business. A court order was obtained requiring Doyle Hicks to pay $1,000 for an appraisal on his wife's behalf but, after the preliminary report, it became evident that a final report costing between $3,000 and $5,000 would be required. In addition, Mrs. Hicks' attorney obtained information about the alleged skimming and felt it desirable to subpoena further business records and "cash cards." He advised Mrs. Hicks that he would need to redepose Doyle Hicks. Mrs. Hicks did not wish to incur the expense of further discovery and, after some fee disputes, fired her lawyer and hired George Mickelson.

Mickelson's handling of the divorce was the subject of widely differing testimony at the malpractice trial. Elaine Hicks stated that Mickelson never talked to her former lawyer and did not look at his files. Mickelson testified that he obtained and reviewed these files. Mrs. Hicks contended that Mickelson spent only thirteen hours preparing the case, treating it as a routine divorce, and that he was not prepared for trial with respect to Doyle Hicks' business valuation expert witness. Mickelson testified that he realized the importance of the value of the husband's business and advised Mrs. Hicks that testimony should be obtained to substantiate a higher value for it, but that she told him it was not necessary as discovery was completed and she

---

* The HONORABLE EUGENE A. WRIGHT, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. The Honorable John Jones, United States District Judge for the District of South Dakota.

did not want to incur further costs. She insisted that the case be tried as soon as possible without further delay or expense. Mickelson therefore used a gross receipts formula, making an allowance of $100,000 for skimming, to arrive at a theory supporting Elaine Hicks' claimed $500,000 value for the business.

At the divorce trial, the judge accepted Doyle Hicks' evidence that the value of his business was $261,000. The judge refused to consider the gross receipts formula advanced by Mickelson. Approximately one year after the entry of judgment in the divorce case, Doyle Hicks sold his vending machines and routes for $225,000, plus $20,000 in inventory. According to Mrs. Hicks, the portion of the business sold was only 36% or so of the total value, and the remainder was the more profitable portion of the business.

Elaine Hicks filed this malpractice case against George Mickelson shortly after her ex-husband's partial sale of the business, complaining particularly about his failure to prepare and to present evidence of the business' value. At the commencement of trial, the district judge announced that he would generally examine the jury panel and would allow each attorney fifteen minutes to conduct voir dire, but would consider extending voir dire if need be. He restricted Mrs. Hicks' counsel to fifteen minutes. She argues on appeal that because Mickleson was a candidate for Governor of South Dakota and the trial occurred just five months before the election, she needed more time on voir dire to evaluate possible juror bias. She also contends that the district court erred in refusing to admit the evidence of the sale of her former husband's business. Finally, she argues that the verdict was against the law and the evidence.

## I.

Before the prospective jurors were called, the district judge established the ground rules. He informed counsel that he would ask general questions and counsel would then be allowed to interrogate individual jurors in the event of a positive response, and to conduct supplemental voir dire examination, but emphasized that each side would be limited to fifteen minutes. Counsel for Mrs. Hicks asked "how hard and fast" the court's time limitation was and the district judge answered that he was pretty tough, but if one thing led to another or the questioning lasted a little longer or there were unforeseen interruptions, he would take that into consideration. If there were frivolous questions, however, he would be extremely tough.

The prospective jurors were then brought into the courtroom and the court introduced the parties and inquired if any of the jurors knew either of them. The judge outlined the basis of the claim involved, and he asked if any had knowledge of the Hicks divorce, if they had been divorced, whether it might carry over to the case, and their availability for a week-long trial. The court further interrogated jurors who knew the parties or had some knowledge of the divorce. The judge told the panel that he would instruct them as to the law of the case at the conclusion of the evidence and asked if there were any reasons why they would be unwilling to accept or follow the instructions. Finally, he asked the panel if, on the basis of what they then knew about the case, anyone would have difficulty being a fair and impartial juror.

Counsel for Mrs. Hicks then asked the jury panel if any member had been involved in the coin-operated machine business or if anyone had owned a business, which led to the specific interrogation of two jurors. Counsel then inquired whether anyone had been involved in appraising businesses or property, whether anyone regularly dealt with accountants, and whether anyone had been a witness in a trial or a party to a lawsuit. The latter question led to specific inquiry of two jurors. The panel generally was asked if anyone had had any dealings with an attorney other than those panel members who had already been interrogated. Three jurors were specifically interrogated and it developed that one was employed as a secretary by a lawyer. The panel was asked

if anyone had prior jury experience in a civil case.

Counsel for Mrs. Hicks then asked whether the panel members were aware that Mickelson was a candidate for Governor and if they could lay that aside and determine the case based on its facts. They were asked if anyone had worked in Mickelson's campaign or any other Republican candidate's campaign, if they had seen any newspaper articles or literature that might relate to the case, and if they could disregard that material and rely solely on what they heard in the courtroom in reaching their decision. Counsel asked the panel if each member felt that he could be the kind of juror he would like to have sitting on his own case if he were in court, and if anyone disagreed with the legal system or felt that it wasn't proper or right to bring a claim in court. Counsel for Mrs. Hicks then stated that he had nothing further. Opposing counsel interrogated briefly and the court informed all present that counsel were going to have an opportunity to deliberate before they exercised their peremptory challenges. No further statements, comments, or objections came from Mrs. Hicks' counsel at this time.

Mrs. Hicks' counsel states in the appellant's brief that he was amazed at the limitation of voir dire and further states that "not wanting to get off on the wrong foot, very little record was made (regrettably)." He also observes that "during voir dire it became readily apparent that it would be impossible to finish all the voir dire planned, much less to examine each juror individually * * *." The brief further states that counsel approached the bench during voir dire to ask for more time, and in an off-the-record discussion the district judge refused this request.

■ Our study of the record reveals that an off-the record conference was in fact held during the voir dire by Mrs. Hicks' counsel. Counsel has attached an affidavit to the appellant's opening brief, in which he states that the conference took place when he was thirteen minutes into his voir dire examination and that he was unaware that it was not on the record. He further states

that during this conference he advised the court that fifteen minutes was inadequate to conduct a satisfactory voir dire and he requested that he be allowed additional time. The court, according to the affidavit, summarily rejected his request and told him he had "a minute and a half to go and the clock [is] running." However, as this discussion took place off the record, we do not know nor may we consider what actually took place during the conference. Nor may we consider counsel's affidavit or statements contained in the briefs to supplement the record. *United States v. Drefke,* 707 F.2d 978, 983 (8th Cir.), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983). As then Judge Blackmun succinctly stated, speaking for our court, "[t]he appeal is to be determined upon the record below." *Stearns v. Hertz Corp.,* 326 F.2d 405, 408 (8th Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

■ Furthermore, it does not appear from the record that counsel for Mrs. Hicks objected to the limitation of voir dire. It is incumbent upon counsel to make his record for appeal even if he believes that objecting to the actions of judge or counsel will give offense either to the court or to the jury. In order for us to review challenges of the district court's rulings, the district court must be advised by counsel on the record of his objection and of the relief requested. *See Moylan v. Maries County,* 792 F.2d 746, 751 (8th Cir.1986); *Thomure v. Truck Ins. Exchange,* 781 F.2d 141, 143 (8th Cir.1986). We can, however, review Mrs. Hicks' argument on a plain error basis, *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 377 (5th Cir. 1982), to determine if the limitation on voir dire was so prejudicial as to cause a miscarriage of justice. *Thomure,* 781 F.2d at 143.

We have already outlined in detail the course of the voir dire examination. Mrs. Hicks' principal complaint is that possible bias arising from Mickelson's notoriety as a gubernatorial candidate was not adequately explored. Her counsel, however, asked the panel a number of questions concerning

Mickelson's candidacy and whether they could lay aside their knowledge of Mickelson's campaign and reach a decision based on the evidence presented. The transcript does not indicate that any of the prospective jurors answered this question negatively. Mrs. Hicks does not suggest in her brief what additional questions she would have employed to ferret out the bias she asserts was created by the campaign.[2] Doubtless there are additional questions that could have been asked relevant to this topic. But we do not think that the district court's limitation of time to conduct voir dire caused a miscarriage of justice, *see id.*, in light of the fact that the limitation did not prevent counsel from asking the panel about their knowledge of Mickelson's candidacy. Moreover, we are satisfied that the initial questions asked by the district court, together with the supplementary questions asked by Mrs. Hicks' counsel, canvassed the serious areas for consideration in selecting a fair and impartial jury. We therefore reject her first allegation of error.

We believe a few additional comments are in order. Rule 47 of the Federal Rules of Civil Procedure specifically authorizes the district court to permit the parties or counsel to conduct voir dire or to itself conduct the examination. We have held that the district court has broad discretion in determining the form and scope of voir dire. *See United States v. Harvey*, 756

F.2d 636, 640 (8th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 97–98, 88 L.Ed.2d 79 (1985); *United States v. Clifford*, 640 F.2d 150, 153 (8th Cir.1981). This is true in civil cases, as well as in criminal cases. *See Labbee v. Roadway Express, Inc.*, 469 F.2d 169, 172 (8th Cir.1972). We are aware that it is common practice in many district courts for voir dire to be conducted entirely by the court. *See, e.g., Luera v. Snyder*, 599 F.Supp. 1459, 1460, 1463 n. 1 (D.Colo. 1984); *see also* Tanford, *An Introduction to Trial Law*, 51 Mo.L.Rev. 623, 629–30 (1986). We are also aware of pending legislation to require district courts to allow voir dire examination by counsel. S. 953, 954, 100th Cong., 1st Sess. 133 *Cong.Rec.* 4862–64 (April 8, 1987). The practice of many state courts is to conduct voir dire in this fashion, and a great many trial practice texts argue its great value from the standpoint of the advocate in selecting a jury. *See, e.g.*, Hanley, *Voir Dire: The View from the Jury Box*, Litigation, Summer 1986 at 21, 22; Spence, *A Voir Dire Masterpiece*, 3 Trial Diplomacy J. 8, 9–10, 56 (1980).[3]

■ The responsibility of the court, however, is to secure for all of the parties the fair, unbiased and impartial jury which the administration of justice requires and to which the parties are entitled. We believe that this interest is well served by entrusting the voir dire process to the discretion of

2. Mrs. Hicks suggests that she should have been given the opportunity to question the panel members about their spouses, their employment, their hobbies, and their children. These topics have little apparent bearing on the issue of bias arising from Mickelson's gubernatorial campaign and we cannot determine from the record if counsel acquainted the court with these additional subjects of examination. Moreover, the record contains the panel's data sheet prepared by the district court and furnished to counsel. This sheet lists the age, educational level, marital status, occupation, and spouse's occupation for each panel member. Information regarding two of Mrs. Hicks' proposed additional topics for examination was thus available to her in at least a summary fashion.

3. For example, one advocate advises attorneys to ask prospective jurors questions that persuade the hearer to adopt his client's view of the facts, such as: "Do you feel that a person who has been injured through the carelessness of

another should absorb his losses and not bring a lawsuit, even though our system of justice was established for this?" Jones, *Voir Dire and Jury Selection*, Trial, Sept. 1986 at 66. The author explains the value of this question as follows:

> On the face of it, you are asking about attitudes toward lawsuits, when in fact you are selling the facts that someone has been injured and someone was careless. This tendency to draw pragmatic implications from implicit suggestions is a powerful form of persuasion. Listeners tend to encode the inference as a fact and later, when asked, often mistakenly report they heard evidence in support of their inference.

*Id.* (footnote omitted). This author's closing comment crystallizes the advocate's goal—"If you handle voir dire well, by the time you reach opening statement, you will be preaching to the converted." *Id.*

an experienced district judge. Participation by counsel in the voir dire process frequently results in undue expenditure of time in the jury selection process, with selection of a jury that has been exposed to studied efforts to predispose the result before the trial commences in earnest. Our experience convinces us that the conduct of the voir dire examination by the district court is the most efficient and effective way to assure an impartial jury and even-handed administration of justice.

## II.

■ We may deal rather quickly with the parties' remaining contentions. Mrs. Hicks argues that the district court erred in excluding from evidence the sale, thirteen months after the divorce trial, of approximately 36% of Mr. Hicks' business for $245,000. She contends that this evidence was relevant both to Mickelson's liability for malpractice and to Mrs. Hicks' damages. The district court ruled that the post-divorce sale of the property was clearly not admissible on the issue of liability and that any probative value of the evidence as it might relate to damages was outweighed by the prejudice on the liability issue.

"The trial court's ruling on the admissibility of evidence will not be reversed on appeal 'absent a clear and prejudicial abuse of discretion.' " *United States v. Pierre*, 812 F.2d 417, 419 (8th Cir.1987) (citations omitted). It is not necessary for us to determine whether the post-divorce sale is relevant to liability or damages, because we cannot say that its exclusion under Rule 403 was a clear and prejudicial abuse of discretion. We have in our earlier decisions recognized the wide discretion placed in, and the deference that must be given to, a trial judge in making a ruling under Rule 403, *Block v. R.H. Macy Co., Inc.*, 712 F.2d 1241, 1244–45 (8th Cir.1983) (evidence of assault of supervisor several hours after discharge of plaintiff excluded under Rule 403). In this malpractice case, evidence of the sale of property some thirteen months after the divorce trial as compared with the value placed on the business by the judge in the divorce case could well cause the jury to lose sight of the essential issue in the case; namely, whether Mickelson had presented proper evidence on the issue of damages. Further, the evidence is cumulative in view of the testimony of a C.P.A., Mark Giddings, that the business had a value of $438,000. While the district court's ruling could have been more detailed, we cannot conclude that the district court abused its discretion in its determination that the probative value of the evidence was outweighed by the prejudice on the liability issue.

■ Mrs. Hicks next argues, without citation of authority, that the verdict was "contrary to the law and the evidence," and that on the record this court must "[find] as a matter of law that [Mickelson] was negligent." We are somewhat uncertain as to what relief Mrs. Hicks is seeking through this argument. If she is asking us to grant her a new trial because the verdict is against the weight of the evidence, we doubt we have the power to do so. *See Green v. American Airlines, Inc.*, 804 F.2d 453, 455 (8th Cir.1986). If we do have such power, we believe that this would be an inappropriate case in which to exercise it. Mrs. Hicks and Mickelson presented differing, substantial evidence to the jury regarding Mickelson's conduct. We likewise reject the argument that Mrs. Hicks is entitled to judgment as a matter of law. The party bearing the burden of persuasion is only rarely entitled to a directed verdict. *See Froemming v. Gate City Fed. Sav. & Loan Ass'n*, 822 F.2d 723, 724 (8th Cir. 1987). The record contains ample evidence from which the jury could reasonably find that Mickelson was not negligent in his handling of Mrs. Hicks' divorce.

Finally, on cross-appeal Mickelson argues that the district court abused its discretion in refusing to assess expert witness fees against Mrs. Hicks. After reviewing the record, we find no abuse of discretion. *See Hiegel v. Hill*, 771 F.2d 358, 359 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

The judgment of the district court is affirmed.