William D. HARDIN, Plaintiff–Appellant,

v.

HUSSMANN CORPORATION,
Defendant–Appellee.

No. 93–3926EM.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1994.

Decided Jan. 17, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied March 7, 1995.*

---

* Fagg, Bowman, Wollman and Morris Sheppard Arnold, Circuit Judges, would grant the suggestion for rehearing en banc.

David C. Howard, St. Louis, MO, for appellant.

Mark J. Bremer, St. Louis, MO, Robert Useted and Rebecca Stith, St. Louis appeared on the brief, for appellee.

Before MORRIS S. ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MELLOY,** Chief District Judge.

MELLOY, Chief District Judge.

William Hardin appeals from a summary judgment granted to Hussmann Corporation (Hussmann) on his claim that Hussmann terminated his employment, at the age of 51, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982). The parties consented the case to a magistrate judge who held that Hussmann was entitled to summary judgment as Hardin was terminated pursuant to a reduction-in-force (RIF) and had failed to present a prima facie case of age discrimination. Hardin argues 1) the magistrate judge erroneously concluded that Hardin was required to show the more stringent prima facie case pursuant to a RIF; 2) even if there was a legitimate RIF, Hardin met the prima facie showing necessary; and 3) alternatively, the magistrate judge erred in ruling on the summary judgment before the completion of discovery. We Reverse.

## I.

Hussmann hired Hardin in 1981 as a research engineer when Hardin was forty-three. Shortly after being hired, Jim Gaines, Hardin's first supervisor, told Hardin that it was unusual for Hussmann to hire someone over the age of forty as an engineer. In 1986, Hussmann transferred Hardin into its Research and Development Department (R

& D) and gave Hardin the title of design engineer.

Shortly before Hardin's termination, he lent a technical book dating from the 1950's to Charles Thomas, Hussmann's Vice–President of Engineering. Upon returning the book, Thomas told Hardin that such an antiquated book should be kept out of sight as it might give their customers the wrong image. Hardin does not allege that Thomas took part in the decision to terminate him, however, Thomas did make the comment in the presence of Richard McCollum, the head of R & D who did make the decision to terminate Hardin.

In May of 1989, Hussmann's CEO decided that there would be a corporate downsizing and told the department heads how many personnel they would have to "lose." The CEO told McCollum he was to fire two of the approximately fifty-four employees in R & D. McCollum then met with his immediate subordinate, Richard Bienvenu, and after a thirty minute discussion, McCollum made the decision to terminate Hardin and twenty-eight year old design engineer Cynthia Monds. McCollum's proffered reason for his decision is that Hardin and Monds had the worst performance records and that they contributed the least to the department.

On April 3, 1989, Todd Russom, age twenty-six, transferred into R & D. Hussmann terminated Hardin on May 15, 1989. On May 22, 1989, David Zielinski, age thirty-three, transferred into R & D as an "evaluation engineer," and in June of 1989, Hussmann advertised to fill a "design engineer" position.

## II.

As a preliminary matter, Hussmann has filed a motion before this court to strike Hardin's brief and portions of his appendix on the basis that Hardin did not submit portions of his appendix to the district court for its consideration of the summary judgment motion. Hardin does not dispute that he failed to submit to the district court most

** The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

of the materials complained of by Hussmann, however, he argues that the additional materials have not prejudiced Hussmann. As we will not consider materials that were not before the district court, *see Hicks v. Mickelson,* 835 F.2d 721, 724 (8th Cir.1987), we grant Hussmann's motion to strike the additional materials. We deny the portion of Hussmann's motion asking that we strike Hardin's brief. The improper appendix material is largely irrelevant to Hardin's various contentions of error and we have taken appropriate note of the points in Hardin's brief that the improper materials support.

## III.

■ We review a grant of summary judgment *de novo. Hase v. Missouri Div. of Employment Security,* 972 F.2d 893, 895 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993). We will affirm the grant of summary judgment if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Bashara v. Black Hills Corp.,* 26 F.3d 820 (8th Cir.1994).

■ We make our *de novo* review recognizing that summary judgments should only be used sparingly in employment discrimination cases. *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1988). Summary judgments should only be granted in those rare instances where there is no dispute of fact and where there exists only one conclusion. *Id.* "All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir.1991) (*quoting Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1164 (8th Cir.1985)).

■ Using the "shifting burdens" analysis laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the plaintiff must first establish, by a preponderance of the evidence, a prima facia case of age discrimination.[1] More specifically, the plaintiff is required to show: 1) he was in the protected age group, i.e., older than forty; 2) he was qualified; 3) despite his qualifications, he was discharged; and 4) a non-member of the protected age group replaced the plaintiff and was assigned to do the same work. *Kehoe v. Anheuser–Busch, Inc.,* 995 F.2d 117, 119 (8th Cir.1993).

■ The importance of the prima facie showing is that it creates the inference that the employer terminated the plaintiff for an impermissible reason. In recognition that a RIF is a legitimate reason for termination, we require plaintiffs discharged pursuant to a RIF, to come forward with an "additional showing" that age was a factor in their termination. *Bashara v. Black Hills Corporation,* 26 F.3d at 823. Further, if a plaintiff is terminated pursuant to a RIF, he or she cannot meet the fourth factor stated above as the plaintiff's position upon termination is either eliminated or combined with another position. *Holley v. Sanyo Mfg., Inc.,* 771 F.2d at 1165.

Hardin argues that the magistrate judge erred when he found that there had been a legitimate RIF. Hardin admitted in his resistance to summary judgment that Hussmann had engaged in a RIF on the date of his termination, but argued that it was not a legitimate RIF. Hardin argues that the RIF was not legitimate as (1) Hussmann was not having financial difficulties and (2) Hussmann did not provide objective criteria to decide which positions to eliminate.

As we observed in *Hillebrand,* 827 F.2d at 367, most companies implementing a RIF have a stated plan to reduce expenses by eliminating jobs and they also provide company decision-makers with objective criteria

---

1. Although *McDonnell Douglas* was an action under Title VII of the Civil Rights Act of 1964, the *McDonnell Douglas* framework also applied to claims under the ADEA. *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, n. 3 (8th Cir.1994).

by which to determine which jobs to eliminate. Hussmann asserts it embarked on a RIF because it had failed to meet the profit levels targeted by its parent corporation. Hussmann does not deny·it failed to provide objective criteria, but argues that this does not require a finding that the RIF did not occur.

■ When a company's decision to reduce its workforce is due to the exercise of its business judgment it need not provide evidence of financial distress to make it a "legitimate" RIF. *See Bashara*, 26 F.3d at 824–25 (no requirement that a company be failing financially before embarking on a RIF). Further, a company does not need to provide objective criteria for determining who should be discharged to make the RIF "legitimate." Whether criteria is provided does not overcome the fact that the company made a business decision to reduce its workforce and therefore had a legitimate reason for terminating qualified employees. Accordingly, we find the magistrate judge correctly concluded that Hussmann terminated Hardin as part of a RIF and consequently, the magistrate judge correctly required Hardin to make the more stringent prima facie showing of a termination pursuant to a RIF.

## IV.

■ In addressing the summary judgment motion, the magistrate judge, citing *Holley*, required Hardin to show the following factors to make a prima facie case of discrimination: 1) he was at least forty years old at the time of termination; 2) his job performance met the employer's legitimate expectations; 3) he was terminated despite his performance; 4) his job continued to exist in its various parts; and 5) his age was a determining factor in defendant's actions. The parties do not object to this list of requirements.

Hardin and Hussmann agree that Hardin met the first three requirements as he was over forty at the time of his termination, he was qualified for his position and, despite his qualifications, he was terminated. What they dispute is whether Hardin's position, in its various parts, continued and whether Hardin can make some additional showing that age was a determining factor in his

termination. The magistrate judge concluded that, because Hardin stated at deposition that he did not know what happened to his job duties, Hardin had failed to establish that his job continued to exist in its various parts. Hardin argues that his statement was merely an acknowledgment that he was not in a position to have specific knowledge as to what happened to his job duties. Hardin has consistently argued that Zielinski and Russom, the two persons transferred into R & D shortly before and after his termination, were either given his job or given his various job duties. Hardin further argues that he was one of several design engineers within the department who shared duties and that, with his termination, the remaining engineers would merely have divided his past duties among themselves.

Hussmann argues that Hardin's acknowledgment at deposition precludes us from finding that Hardin's job continued in its various parts. We find that the magistrate judge incorrectly looked at Hardin's statement in isolation. Hardin presented evidence that other engineers were transferred into R & D around the same time as his dismissal and that there were several engineers within R & D who held the same job title and had virtually the same duties and responsibilities as Hardin. Therefore, we find a material issue of fact remains about whether Hardin's job, in its various parts, continued to exist after his termination.

Finally, we turn to the magistrate judge's finding that Hardin failed to proffer any evidence that Hussmann used age as a factor in its decision to terminate him. Hardin first asserts that the cursory manner in which McCollum determined who to discharge suggests Hussmann terminated him for an improper reason. McCollum acknowledged that he was free to terminate any two employees within his department from his lowest paid employees (custodial workers) to his highest paid employees. McCollum made his decision to fire Hardin and Monds after· a thirty minute discussion with Bienvenu. McCollum found that Hardin and Monds were the obvious persons to be terminated as "[t]hey had the poorest performance record, they were making the least contribution, they

seemed to be the worst fit in the department, they had the least interpersonal skills, [and] they were not making a contribution to the department sufficiently to choose someone else."

McCollum made these conclusions without consulting with Hardin's direct supervisor and without reviewing Hardin's or any other employee's personnel records. The only time McCollum had reviewed employee records was when he reviewed portions of Hardin and other department employee's personnel files upon being transferred to R & D in September of 1988.

In the past, we have looked to an employer's method of determining which employees to discharge for evidence of possible discriminatory intent. *See Bashara,* 26 F.3d at 825; *Hillebrand,* 827 F.2d at 367. *See also Christie v. Foremost Ins. Co.,* 785 F.2d 584, 587 (7th Cir.1986) (the method used by the defendant might "show that the defendant was not really trying to decide which employee had greater potential"). McCollum's stated objective was to determine which two employees had the least potential and provided the least to the department. McCollum's reliance on incomplete research and his failure to even consider other employees, raises the question whether McCollum was actually trying to determine which two employees had the least potential and therefore, raises a material issue of fact whether his stated reasons for choosing Hardin are pretextual.

Hardin next argues that the two statements made during his employment suggest a company wide animus toward older employees. Hussmann argues that the statement in which Gaines said that Hussmann does not generally hire persons over the age of forty as engineers, would only be relevant if Hussmann had refused to hire Hardin in the first place. Hussmann asserts the Thomas comment, that antiquated books should be hidden as they might give customers the wrong image of the company, should be found to be irrelevant as it was not made in reference to Hardin or his age.

We disagree. While each statement taken alone is not so troubling, together they can reasonably be taken to suggest that Hussmann prefers to extend a youthful look to its customers. These comments, viewed in the light most favorable to Hardin, could be found to show that Hussmann harbors a company wide animus toward older employees. We think it is a close question whether these statements constitute the "additional showing," which *Holley* requires, however, these statements along with our determination that McCollum's stated reasons for terminating Hardin could be found to be pretextual, combine to meet the "additional showing" requirement.

### V.

The parties also dispute whether summary judgment was appropriate where Hardin had an outstanding motion to compel discovery. Because we decide that the magistrate judge erred in granting summary judgment due to the evidence currently before us, we find we do not need to address this issue.

Accordingly, we REVERSE the grant of summary judgment and remand for further proceedings consistent with this opinion.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

In my view, plaintiff has not sustained his burden of providing sufficient evidence that age was a factor in Hussmann's decision to terminate him. Indeed, he is grasping at straws. I find nothing in Hussmann's method of termination that betrays an illegal animus; and the statement about its hiring practices is virtually weightless since this is not a failure-to-hire case, and the remark was made almost a decade before plaintiff's termination. This leaves only the comment about antiquated books as evidence of age-based discrimination.

With respect, I find the court's reliance on this stray comment quite misplaced. In the first place, it might have been a mere jocularity. Federal law has virtually transformed our offices and factories into completely humorless places: There is evidently nothing that a person can say that cannot be remade into something dark and actionable by a sufficiently suspicious imagination. The right to speak, formerly an object of jealous protection by the federal courts, has been

turned on its head and made into a right to be free from imaginary insult. Second, we can take judicial notice that the useful half-life of engineering knowledge acquired in the 1950s turned out to be perhaps three years, four years at the most. Less than one percent of what is contained in some engineering books produced in the 1950s, therefore, would be of any practical utility. That an employer could be held liable for saying so is more than a little surprising.

I therefore respectfully dissent.