# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1133MN

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of |
| | * | Minnesota. |
| Bounthavy Sithithongtham, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 1999

Filed: October 14, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


A jury convicted Bounthavy Sithithongtham of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and making false statements to a licensed firearms dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Sithithongtham was sentenced to 63 months in prison on each count, to be served concurrently, and to be followed by a three-year term of supervised release. Sithithongtham appeals his conviction, arguing, among other things, that his right to exercise peremptory challenges was violated when he was forced to use three

of those challenges to strike jurors whom the District Court should have struck for cause. Controlling precedent in this Circuit requires us to reject this argument, and we therefore affirm Sithithongtham's conviction.

## I.

We state the facts in the light most favorable to the jury's verdict. On September 13, 1997, Sithithongtham purchased an SKS semi-automatic rifle from a licensed firearms dealer in Worthington, Minn. In completing the necessary forms for the Bureau of Alcohol, Tobacco, and Firearms, Sithithongtham indicated, falsely, that he had never been convicted of a felony. Soon after Sithithongtham purchased the SKS rifle, a shooting occurred at a nearby American Legion Hall. An investigation of the shooting led police investigators to Sithithongtham. Investigators also discovered the SKS rifle, although the rifle was not involved in the American Legion Hall shooting, and further discovered that Sithithongtham was a convicted felon. Sithithongtham was charged with being a convicted felon illegally in possession of a firearm and of making false statements to a licensed firearms dealer. Although Sithithongtham suggested at his trial that it was not he, but his brother, who purchased the rifle, the jury did not believe Sithithongtham, and convicted him of both charges.

## II.

Sithithongtham argues that the District Court erred in refusing to strike three prospective jurors for cause. We review decisions denying challenges for cause for an abuse of discretion. United States v. Amerson, 938 F.2d 116, 118 (8th Cir. 1991). We believe, in this case, that the District Court abused its discretion.

During the voir dire, the District Court asked the pool of potential jurors whether any of them believed "that a law enforcement officer, when testifying in court, is more believable simply because of their position" (Trial Tr. 24.) Three of the prospective

jurors responded that they held such a belief.  The District Court questioned two of the jurors individually about their responses:

> Court:  Now, the question I asked about the witnesses in the case being law enforcement officers, and I think you answered by saying that you thought you might believe them simply because of their occupation.  Can you elaborate on that for us a little bit?
>
> Steven Harris:  Well, whether I realize it or not, I would probably give them the benefit of the doubt. . . .I [feel] them to be very honest  people.
>
> Q:     Do you think that would affect your ability to be fair and  impartial as you hear the evidence in this case?
>
> A:     Whether I realize it or not, I would probably give them the benefit of the doubt if something was questionable.

(Trial Tr. 42.)

> *****
>
> Court:  There was a question that I asked about whether individuals had strong prejudices either for or against law enforcement.  I think you raised your hand.  Could you elaborate on that?
>
> Dale Dordal:  Just my friends I have are in the law enforcement.  And I know the work that they go through, you know, to make a case and everything.  . . .  I guess I would listen to their opinion more, you know.
>
> Q:     Do you think that would affect your ability to be fair and impartial as you listen to the evidence in this case, the fact that there are law enforcement officers who are testifying about what they did?
>
> A:     It may have an affect (sic) on me.  But I think everybody should just listen to the evidence as presented.

Q:   So you think you could be fair and impartial under the circumstances, or do you think it would be difficult for you?

A:   No, I'm sure I could <u>probably</u> be fair and impartial.

(Trial Tr. 92-93) (emphasis ours).

The District Court did not question the third prospective juror, Gordon Loverink, about his response that he would tend to believe a law enforcement officer's testimony based simply on his or her position in law enforcement, although the Court did question him about his work as a special deputy for two years in Montana (Trial Tr. 75-76.) Because these prospective jurors each demonstrated a bias in favor of believing a law enforcement officer's testimony, Sithithongtham asked the District Court to strike them for cause. The District Court refused. Sithithongtham therefore decided to use three of his peremptory challenges to remove the prospective jurors.

Sithithongtham does not argue that his Sixth Amendment right to a trial by an impartial jury was violated. None of the twelve jurors actually selected displayed any bias or prejudice that would affect their impartiality. What Sithithongtham does argue is that his right to exercise peremptory challenges was violated when he was forced to expend three of his peremptory challenges to strike jurors who should have been struck for cause. The Court erred in refusing to strike these prospective jurors. With no further questioning by the Court of Loverink about his apparent partiality in favor of a law enforcement officer's testimony, we can only assume that Loverink would not have been impartial. The other prospective jurors fare no better. A juror who "would probably give [law enforcement officers] the benefit of the doubt," is not what we would consider impartial. Nor is a juror who "could probably be fair and impartial." "Probably" is not good enough.

III.

Nothing in the Constitution guarantees a criminal defendant, or the government, the right to any peremptory challenges. Although peremptory challenges are not a constitutional right, the challenge has long been recognized as "one of the most important rights secured to the accused." Swain v. Alabama, 380 U.S. 202, 219 (1965) (citations omitted). This right is secured in the Federal Rules of Criminal Procedure, which guarantee a federal criminal defendant a certain number of peremptory challenges. Fed. R. Crim. P. 24(b). In Sithithongtham's case, Rule 24(b) entitled him to ten peremptory challenges.

When Sithithongtham was forced to use three of his ten peremptory challenges to strike potential jurors who should otherwise have been struck for cause, his guarantee was reduced from ten peremptory challenges to seven. He claims that it is irrelevant that an unbiased jury heard the case. Defendant relies on the following statement by the Supreme Court:

> The denial or impairment of the right is reversible error without a showing of prejudice . . .. "For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose."

Swain v. Alabama, 380 U.S. at 219, quoting Lewis v. United States, 146 U.S. 370, 378 (1892).

The government argues that since the jury that tried Sithithongtham was impartial, Sithithongtham's rights were not violated, even though he had to use three of his peremptory challenges to ensure an impartial jury. The government relies on Ross v. Oklahoma to support this argument. Ross held that, under the governing law

-5-

in that case, the defendant's federal constitutional rights were not violated when he was forced to exhaust some of his peremptory challenges to strike potential jurors whom the trial court should have struck for cause. Ross v. Oklahoma, 487 U.S. 81, 90-91 (1988). Ross was tried in an Oklahoma state court, and the Oklahoma statute governing peremptory challenges applied. Id. Under Oklahoma law, the grant of peremptory challenges to a criminal defendant "is qualified by the requirement that the defendant must use those challenges to cure erroneous refusals by the trial court to excuse jurors for cause." Id. at 89-90. Because Ross "received all that Oklahoma law allowed him . . . his due process challenge fail[ed]." Id. at 91.

The Court in Ross added, however, that it was not deciding whether, absent the Oklahoma statute, a denial or impairment "of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause." Id. at 91 n.4. Sithithongtham's situation is exactly that which the Court declined to decide in Ross.

IV.

This is not the first time we have been faced with a situation in which a federal criminal defendant, on direct appeal, has argued that he was forced to use peremptory challenges to strike prospective jurors who should have been struck for cause. In United States v. Amerson, we reversed the defendants' convictions, as felons in possession of firearms, because, in part, the District Court refused to strike for cause prospective jurors who indicated during voir dire that they would "give greater credence" to the testimony of police officers over other witnesses. United States v. Amerson, 938 F.2d 116, 117 (8th Cir. 1991). The District Court has considerable discretion in conducting voir dire. That discretion is subject, however, to " ' the essential demands of fairness.' " Id. at 118 (quoting United States v. Cassel, 668 F.2d 969, 971 (8th Cir. 1982)). For the defendants in Amerson those demands were not met, and the Court remanded for a new trial. Amerson, 938 F.2d at 118. The Amerson

opinion, however, says nothing about peremptory challenges. It does not even reveal whether the jurors in question actually sat on the trial jury. We have examined the briefs and record in <u>Amerson</u>, and in fact those jurors were removed by peremptory challenges made by the defendant. Notwithstanding this fact, the <u>Amerson</u> court reversed the conviction. As a matter of logic, this must mean that the <u>Amerson</u> court thought it was not important whether these biased jurors sat or not. It must mean that the <u>Amerson</u> court believed (though without saying so) that erroneously requiring a defendant to use a peremptory challenge is an error reversible per se, a structural error, so to speak.

If <u>Amerson</u> is a holding in Sithithongtham's favor on this issue, however, it is only a holding <u>sub silentio</u>. Two other cases addressing this issue, and decided by our court, reached a different conclusion, and did so explicitly. In <u>United States v. Cruz</u>, the defendant used a peremptory challenge to get rid of a prospective juror he believed was biased. <u>United States v. Cruz</u>, 993 F.2d 164, 168 (8th Cir. 1993). He argued, on appeal, that the District Court should have struck the prospective juror for cause. <u>Id.</u> After indicating that there was no error because the prospective juror did not, in fact, display any bias, the panel in that case, relying on <u>Ross</u>, said that "because Cruz exercised a peremptory challenge to remove him, the juror was 'thereby removed from the jury as effectively as if the trial court had excused him for cause.' " <u>Id.</u> (quoting <u>Ross</u>, 487 U.S. at 86). The court went on to conclude that Cruz "failed to establish that the jury was not impartial or that he suffered any prejudice from the denial of his challenge for cause." <u>Cruz</u>, 993 F.2d at 169. Cruz's conviction was affirmed.

Following the rationale in <u>Cruz</u>, the panel in <u>United States v. Horsman</u> reached a similar result. <u>United States v. Horsman</u>, 114 F.3d 822, 825 (8th Cir. 1997). Horsman argued that the District Court's failure to strike a prospective juror, whom Horsman then removed with a peremptory challenge, was grounds for reversal. <u>Id.</u> The panel ruled that even if the District Court had erred in not striking the prospective juror for cause, "Horsman's only complaint . . . that he had to use a peremptory

challenge against [the juror] . . . [did] not state a ground for reversal." <u>Id.</u> Horsman would have had to show that the jury which sat in his case was actually biased in order to obtain a reversal of his conviction. The panel relied on <u>Cruz</u>, as well as <u>Ross</u>, in reaching this decision.

In these circumstances, we believe it is our duty to follow the explicit precedents of this Court in <u>Cruz</u> and <u>Horsman</u>. The cases are unquestionably in point and in the government's favor. The result in <u>Amerson</u>, as a logical matter, is impossible to reconcile with these later cases, but one can know that only by delving into the <u>Amerson</u> record and briefs. If <u>Amerson</u> were the only case arguably in point, this would be an acceptable technique, and we would have no hesitancy in using it. The <u>Cruz</u> and <u>Horsman</u> panels did not cite <u>Amerson</u>, no doubt for the simple reason that they had no cause to suspect that <u>Amerson</u> had decided the issue before them. Similarly, the bar, which must depend on our published opinions to determine the law of the Circuit, should not be required, in the ordinary situation, to go behind those opinions and consult the briefs and record in order to determine what the opinions held. Regardless of what this panel might think about the merits of the issue, we are powerless to change what a previous panel of our Court has held. We therefore must apply the <u>Cruz</u> and <u>Horsman</u> rule and reject Sithithongtham's contention.

We note that other circuits have reached a contrary result. The Fifth Circuit characterized the issue as follows: " 'As a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges.' " <u>United States v. Hall</u>, 152 F.3d 381, 408 (5th Cir. 1998), quoting <u>United States v. Nell</u>, 526 F.2d 1223, 1229 (5th Cir. 1976). The Ninth Circuit is in accord. <u>United States v. Martinez-Salazar</u>, 146 F.3d 653 (9th Cir. 1998), <u>cert. granted</u>, 119 S. Ct. 2365 (1999). The Supreme Court has granted review in <u>Martinez-Salazar</u>, so perhaps we will soon get a more authoritative answer to the question. For the moment at least, this panel must apply our own precedents.

-8-

Sithithongtham raises two other arguments in his appeal. We find no merit in either. The District Court did not err in allowing the government to introduce documentary evidence which became known to the government only on the first day of trial, and which the government had not, therefore, had time to share with the defendant. Nor were there any improper or prejudicial comments in the government's closing argument that would warrant either a corrective instruction from the Court or a mistrial.

Affirmed.

JOHN R. GIBSON, Circuit Judge, concurring specially.

I concur in the court's opinion today because I am compelled to do so by the precedent of this court. Sithithongtham was forced to exercise three peremptory challenges to remove venire members who testified to their belief that a law enforcement officer testifying in court is more believable simply because of his or her position. The trial court's failure to remove those prospective jurors for cause has created a situation that offends the essential demands of fairness, and in essence created the possibility that Sithithongtham was tried on less than a level playing field. I agree with the rule adopted by the Fifth Circuit as articulated in United States v. Hall, 152 F.3d 381, 408 (5th Cir. 1998) (quoting United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976)), that "it is error for a court to force a party to exhaust its peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges" and that this should be reversible error without a showing of prejudice. See also United States v. Martinez-Salazar, 146 F.3d 653 (9th Cir. 1998).

The testimony of the three venire members made plain that they would give the testimony of the law enforcement officers the benefit of the doubt, would listen to the officers' opinions more, and that the officers' status would have an effect on them. To be required to use peremptory challenges to remove such venire members was fundamentally unfair and is grounds for reversal. I would reverse and remand for a new trial.

BOWMAN, Circuit Judge, concurring.

I concur in the Court's disposition of this appeal. As the opinion of the Court explains, the peremptory challenge issue is governed by <u>United States v. Cruz</u>, 993 F.2d 164 (8th Cir. 1993), and <u>United States v. Horsman</u>, 114 F.3d 822 (8th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 702 (1998). These cases have established the law of the Circuit. But even were we writing in this case on a clean slate, I would decide the case the same way. In my view, <u>Cruz</u> and <u>Horsman</u> accurately reflect the true relationship between denied challenges for cause and peremptory challenges.

Sithithongtham in fact exercised all ten of the peremptory challenges guaranteed him by Federal Rule of Criminal Procedure 24(b). He was tried and convicted by an impartial jury, one that did not include any of the jurors who arguably should have been dismissed for cause. Sithithongtham makes no claim that he suffered any actual prejudice. The use that Sithithongtham made of three of his peremptory challenges--to exclude from the trial jury three potential jurors who Sithithongtham thought were biased, but who the trial judge thought could obey their oaths and whom the judge therefore refused to strike for cause--illustrates one of the main reasons for allowing peremptory challenges. <u>I.e.</u>, even when the trial judge may be in error in declining to strike one or more potential jurors for cause, peremptory challenges are available to exclude those jurors and thus to assure exactly what Sithithongtham had here--a qualified and unbiased trial jury. The Supreme Court explicitly has recognized that, far

-10-

from being a denial or impairment of the right, this is a proper use of peremptory challenges:

> Indeed the very availability of peremptories allows counsel to ascertain the possibility of bias through probing questions on the *voir dire* and facilitates the exercise of challenges for cause by removing the fear of incurring a juror's hostility through examination  and challenge for cause.

Swain v. Alabama, 380 U.S. 202, 219-220 (1965) (emphasis added).  Similarly, in Batson v. Kentucky, 476 U.S. 79 (1986), the Court observed that, "[w]hile the Constitution does not confer a right to peremptory challenges, those challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury."  476 U.S. at 91 (emphasis added and citations omitted).  Clearly, Sithithongtham  used the three peremptories that are the focus of this appeal in a manner consistent with a fundamental purpose of the peremptory challenge--to help assure that each case is heard by a qualified and unbiased jury--and his right to the full exercise of his ten peremptory challenges was neither denied nor impaired.

Adoption of a rule contrary to the one we have applied to the peremptory challenge issue in this case could only result in a grave disservice to the administration of justice, with verdicts reached by juries after scrupulously fair and error-free trials being reversed for no better reason than that the defendant used one or more peremptory challenges to strike one or more potential jurors whom the trial judge, exercising his or her discretion, has declined to remove for cause.  Were our Court to adopt such a rule, it would follow that whenever we would conclude that the district court erred in declining to strike a potential juror for cause, the defendant's use of a peremptory challenge to remove that potential juror ipso facto would require reversal of the defendant's conviction, even where, as here, the defendant is tried by a qualified and unbiased jury.  Happily, this is not the law of our Circuit, and I would hope it never will be the rule by which we set our course.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.